DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Anita L. George, et al., ) | |
| ) | CASE NO. 5:11 CV 979 |
| Plaintiffs, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| Mark A. Anspach, et al., ) | |
| ) | |
| Defendants. ) | |

In this case, *pro se* plaintiffs Anita L. George and Winona C. Bush (collectively, the Plaintiffs) claim that they were deprived of their constitutional rights in connection with their arrest by defendant Deputy Mark Anspach, and seek redress pursuant to 42 U.S.C. § 1983. Plaintiffs also assert pendent state claims in connection with Deputy Anspach's alleged conduct.

Defendants Summit County, Summit County Prosecutor's Office, Summit County Sheriff's Office, and Deputy Mark Anspach (collectively, the Defendants) moved to dismiss Plaintiffs' complaint under Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs cannot prevail as a matter of law on their alleged claims that their constitutional rights were violated. ECF 4.

Plaintiffs opposed Defendants' motion. ECF 5. Defendants filed a reply in support of their motion to dismiss for failure to state a claim and/or for judgment on the pleadings (ECF 9), and Plaintiffs, with leave of Court, filed a sur-reply (ECF 19).

The Court scheduled a hearing on the Defendants' motion for November 30, 2011 at 1:00 p.m. Prior to the hearing, the Court spent a great deal of time studying the parties' pleadings and the briefs filed in connection with Defendants' motion. Against the background of

(5:11 CV 979)

that extensive preparation, the Court questioned each side regarding their respective positions and considered their responses. After considering all of the pleadings and materials attached thereto, the parties' briefs, the parties' statements at the hearing and responses to the Court's questions, the Court announced at the conclusion of the hearing that Defendants' Rule 12 motion was GRANTED. This Memorandum Opinion sets forth the basis for the Court's ruling.

## I. PLAINTIFFS' COMPLAINT

Plaintiffs contend that they were arrested without probable cause for interfering with custody of a minor child, and consequently, deprived of their constitutional rights. In support of their claims, Plaintiffs attached a number of exhibits to their complaint. These exhibits include a witness statement by Kristel Kirkpatrick, who called defendant Deputy Anspach to her home regarding Plaintiffs' actions relative to Nautica Bush, a minor child (Exhibit R), as well as the incident report prepared by Deputy Anspach regarding the events surrounding his arrest of Plaintiffs (Exhibit A-Q).

A.     Factual Background

The events at issue in this case revolve around a minor child, Nautica Bush. According to the complaint, the following relationships exist among certain individuals. Lonnel Bush is Nautica Bush's father and lives in Canton, Ohio. It appears from the complaint that Nautica Bush was 10 years old at the time of the events at issue and lived with her mother, Kenda Preston, in Hudson, Ohio. Plaintiff Anita George is the mother of Lonnel Bush, and the grandmother of Nautica Bush. Plaintiff Anita George also the mother of Plaintiff Winona Bush. Winona Bush is the aunt of Nautica Bush.

2

(5:11 CV 979)

On May 19, 2009, Plaintiffs went to Hudson, Ohio at the behest of Lonnel Bush to determine if Nautica Bush had been left home alone. Without explaining the details, the complaint alleges that Plaintiff Winona Bush verified that Nautica Bush was home alone and transmitted that information to Lonnel Bush. Lonnel Bush, concerned for his daughter's safety, called the Summit County Sheriff regarding his concerns that Nautica Bush was left home alone while her mother was working.

Defendant Deputy Anspach arrived on the scene at Nautica Bush's house in Hudson, Ohio, in response to Lonnel Bush's phone call. Plaintiffs were both on the scene when Deputy Mark Anspach arrived. Deputy Anspach spoke with Nautica Bush's neighbor, Kristel Kirkpatrick, who also spoke with Plaintiff Winona Bush. Kristel Kirkpatrick told Defendant Deputy Anspach that she was watching Nautica Bush. Deputy Anspach also spoke with Nautica Bush and concluded that there were no problems with Nautica Bush's safety.

Winona Bush called Kenda Preston and asked her if Nautica Bush could go with Plaintiffs Anita George and Winona Bush to Lonnel's Bush's house in Canton, Ohio. Kenda Preston told Winona Bush not to take Nautica Bush.

According to the complaint, plaintiff Anita George was distressed about her granddaughter's safety, leaves the scene with plaintiff Winona Bush. Plaintiffs claim that about a half block away, defendant Deputy Anspach pulled them over and "told the Plaintiffs that someone said they were trying to drag Nautica out of the yard and put her into their car." ECF 1, par. 35. Defendant Deputy Anspach then arrested Plaintiffs for interfering with custody in

3

(5:11 CV 979)

violation of Ohio Revised Code § 2919.23.[1] According to the complaint, Deputy Joseph Donald, who is not named as a defendant in the complaint, also arrived on the scene and was instructed by defendant Deputy Anspach to obtain a written statement from Kristel Kirkpatrick. After about thirty minutes had passed, defendant Deputy Anspach drove back to Nautica Bush's house to retrieve Kristel Kirkpatrick's written statement, and then transported Plaintiffs to jail in Twinsburg Ohio. Plaintiffs were placed in a cell for about two hours, after which Plaintiffs were released and given a summons to appear at Stow Municipal Court on May 27, 2009, and allegedly told by defendant Deputy Anspach "never go back into that neighborhood again." ECF 1, par. 37-42.

      Plaintiffs allege that they were arrested and detained without probable cause, that the handcuffs used by defendant Deputy Anspach were too tight, that the cell in which they were placed contained a pool of urine, that defendant Deputy Anspach declined to allow plaintiff Winona Bush to make a phone call and told her that she could make a phone call after he prepared the summons and released them, and that they were not allowed to use the bathroom at the jail. ECF 1, par. 37-42.

---

[1] Ohio Revised Code § 2919.23 provides in relevant part:
    (A) No person, knowing the person is without privilege to do so or being reckless in that regard, shall entice, take, keep, or harbor a person identified in division (A)(1), (2), or (3) of this section from the parent, guardian, or custodian of the person identified in division (A)(1), (2) or (3) of this section:

    (1) A child under the age of eighteen, or a mentally of physically handicapped child under the age of twenty-one; ...

(5:11 CV 979)

Plaintiffs further allege that defendant Deputy Anspach "intentionally and maliciously falsified the police report to make a defense for the arrest of the Plaintiffs" and "intentionally manufactured false evidence in an effort to falsely arrest and falsely imprisoned Ms. Bush and Mrs. George without probable cause." ECF 1, par. 45-46. Plaintiffs attach defendant Deputy Anspach's report to their complaint.[2]

Plaintiffs appeared before Judge Kim Hoover[3] on September 8, 2009. "Judge Hoover dismissed all of the charged but he intimidated the Plaintiffs and made them pay two hundred and forty-seven[4] dollars each in court cost, violating their constitutional rights in paying excessive fines." ECF 1, par. 47.

B.  Plaintiffs' Claims

Plaintiffs name as defendants Mark A. Anspach in his individual and official capacities, the Summit County Sheriff, Summit County, Summit County Prosecutor, the City of Akron, and various John Does. Plaintiffs attached a number of exhibits to the complaint in support of their claims, including defendant Deputy Anspach's incident report regarding the above-described

---

[2] Plaintiffs argue in their sur-reply to Defendants' Motion to Dismiss that Deputy Anspach "fabricated the entire police report." ECF 19, p. 9 of 11. Plaintiffs' conclusory allegation that Deputy Anspach maliciously and intentionally fabricated the police report is not supported by facts in the pleadings which, if true, would support that allegation. To the contrary many of the facts alleged in the complaint regarding the events leading up to Plaintiffs' arrest are also contained in Deputy Anspach's police report, which belies Plaintiffs' argument that he fabricated the entire report.

[3] Judge Kim Hoover is not named as a defendant in this action.

[4] The Court notes that the Exhibits S and T to the complaint, which appears to be an undated statement by Anita George, states that the court costs were two hundred and fifty-seven dollars.

5

(5:11 CV 979)

events, and the witness statement of Kristel Kirkpatrick.

Plaintiffs assert five claims pursuant to 42 U.S.C. § 1983: 1) "Defendant's above-described conduct"[5] violated Plaintiffs' right to freedom of speech, assembly and association under the First and Fourteenth Amendments to the United States Constitution (Claim 1); 2) "Defendant's above-described conduct"[6] Plaintiffs' right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution (Claim 2); 3) "Defendant's above-described conduct"[7] violated Plaintiffs' right to be free from excessive fines under the Eighth and Fourteenth Amendments to the United States Constitution (Claim 3); 4) "Defendant's above-described conduct"[8] violated Plaintiffs' right to equal protection under the Fourteenth Amendment to the United States Constitution (Claim 4); and 5) municipal liability of Summit County and the City of Akron because defendant Deputy Anspach's actions constituted "official policy" and because defendant Deputy Anspach was "on the radio during the false arrest of the Plaintiff[s], and he was advised by a senior officer [Sergeant Ahwajee] as to the procedures and steps to take." (Claim 7).

---

[5] Plaintiffs do not identify which defendant this claim refers to, but presumably it refers to defendant Deputy Anspach.

[6] Plaintiffs do not identify which defendant this claim refers to, but presumably it refers to defendant Deputy Anspach.

[7] Plaintiffs do not identify which defendant this claim refers to. The factual allegations in paragraph 47 of the complaint regarding the court costs imposed by Judge Hoover states that the imposition of those costs violated Plaintiffs' rights with respect to excessive fines. However, Judge Hoover is not named as a defendant in this case.

[8] Plaintiffs do not identify which defendant this claim refers to, but presumably it refers to defendant Deputy Anspach.

6

(5:11 CV 979)

Plaintiffs also assert the following five claims in connection with the facts alleged in the complaint: 1) "Defendant's above-described conduct"[9] constitutes false arrest and false imprisonment (Claim 5); 2) "The above-described conduct of Defendant"[10] constitutes assault and battery (Claim 6); 3) "Defendant's above-described conduct"[7] was the proximate cause of Plaintiffs' extreme emotional intentional infliction of emotional distress (Claim 8); 4) "Defendants[8] had a duty to properly hire, train, oversee, supervise and discipline police officers and sheriff department so as to prevent violation of plaintiff's [sic] constitutional, statutory, and common law rights.  By the conduct described above, Defendants breached the duty of care owed to Plaintiffs and proximately cause [sic] them . . damages." (Claim 9: Negligence); and 5) "Defendants [sic] Mark Anspach instigated the prosecution of Ms. Bush and Mrs. George with malice, for an improper purpose other than bringing an offender to justice." (Claim 10: Malicious Prosecution).

Plaintiffs have sued several defendants as noted above.  However, with two exceptions, Plaintiffs' claims do not specify the defendant or defendants against whom each claim is brought.  As noted in the Court's footnotes to the summary of Plaintiffs' claims, most of the claims are against defendant Deputy Anspach, or against others allegedly as a result of his

---

[9] Plaintiffs do not identify which defendant this claim refers to, but presumably it refers to defendant Deputy Anspach.

[10] Plaintiffs do not identify which defendant this claim refers to, but presumably it refers to defendant Deputy Anspach.

[7] Plaintiffs do not identify which defendant this claim refers to, but presumably it refers to defendant Deputy Anspach.

[8] Plaintiffs do not identify which defendants this claim refers to.

7

(5:11 CV 979)

conduct.

C.     Exhibits Attached to Complaint by Plaintiffs in Support of Their Claims

In support of their claims, Plaintiffs attached Exhibits A through Z to their complaint. One of those attached exhibits is Exhibit R, the witness statement of Kristel Kirkpatrick given on May 19, 2009, which provides as follows:

> I picked Nautica up from school and brought her home (to my house).
> I let her take her book bag into her house.  When she was in the house,
> a woman walked down the street and then said she was the Aunt.
> When Nautica came outside I let her talk to the mom said they would
> be ok [sic].  Then a Sheriff stopped.  I explained that I was watching her.
> A few min. later the aunt and grandma tried to take her.  I would not let
> them and we called the Sherrif [sic] again.

Plaintiffs also attached to the complaint the incident report prepared by defendant Deputy Anspach regarding the events of May 19, 2009 (Exhibits B-F).  Deputy Anspach's incident report sets forth the factual basis for his arrest of Plaintiffs.  The incident report provides as follows on the pages designated Exhibits C and D:

> The sheriff's office was requested (by phone) by Lonnel Bush, the
> father of Nautica Bush (Victim #1), to check on her welfare.  He
> alleged she was left home alone.  Upon responding deputy's
> arrival, it was learned that Nautica's mother (Kenda Preston) had
> prearranged for neighbor Kristel Kirkpatrick to baby-sit Nautica
> until her mother returned home from work.  It was also learned that
> Nautica's paternal grandmother and aunt, defendant Anita George
> and Winona Bush respectively, were on scene to inquire on her
> well being.  The defendants were advised that Nautica was under
> the care and supervision of Mrs. Kirkpatrick per Kenda Preston's
> wishes.  The defendants were advised that there was no cause for
> concern.  The defendants stated they would stay out of the matter
> and let Nautica's mom and dad handle it.  The defendants began to
> walk away towards their vehicle as if to leave.  This deputy cleared
> the scene without incident.

(5:11 CV 979)

> Shortly afterwards, this deputy was summonsed back to the Kirkpatrick residence. She advised that the defendants returned and stated they were taking Nautica away from her. Mrs. Kirkpatrick stated that the defendants each took Nautica by the arm and led her off the Kirkpatrick property. Mrs. Kirkpatrick stated that words were exchanged and she demanded Nautica's release. Nautica was let go and did return to Mrs. Kirkpatrick's care. The defendants left the scene but were located nearby where they were taken into custody. The defendants were summonsed into Stow Municipal Court and released. Sergeant Ahwajee was advised.

Also attached to Plaintiffs' complaint in support of their claims is the docket from the criminal proceedings in state court which charged Plaintiffs with violating Ohio Revised Code § 2919.23(A)(1) - Interference with Custody. Exhibits U-X. With respect to the conclusion of those proceedings, the docket entries that the cases were "Dismissed at Defendant's cost with her agreement." *See* Exhibits V and X.

## II. LAW AND ANALYSIS

A.  Defendants' Rule 12 Motion

Defendants have moved to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and/or for judgment on the pleadings pursuant to Rule 12(c).

With respect to Rule 12(b)(6), a court may grant a motion to dismiss when plaintiff fails to state a claim upon which relief may be granted. When considering a motion to dismiss, the Court must assume well-pleaded factual allegations as true, but need not accept a plaintiff's conclusory allegations as true. In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, which if accepted to be true, states a claim for relief that is plausible on

9

(5:11 CV 979)

its face. The plausibility requirement requires more than a sheer possibility that the defendant acted unlawfully. *Ashcroft v. Iqbal,* 120 S.Ct. 1937, 1949-51 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate if plaintiff fails to state a claim upon which relief can be granted.

With respect to Rule 12(c) motion for judgment on the pleadings, the court must accept well-pleaded factual allegations as true and determine whether the moving party is entitled to judgment as a matter of law. Like a Rule 12(b)(6) motion, the Court need not accept plaintiff's legal conclusions, or unwarranted factual inferences, as true. *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336-37 (6th Cir. 2007)

When considering a motion to dismiss pursuant to Rule 12, the court may only consider facts alleged in the pleadings and documents attached as exhibits to the pleadings.[9] Documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss without converting a Rule 12 motion to a motion for summary judgement. *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007)(citing Fed. R. Civ. P. 10(c)).

B.      42 U.S.C. 1983

Plaintiffs seek redress for alleged violations of various constitutional rights pursuant to 42 U.S.C § 1983, which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance,

---

[9] Rule 10(c) of the Federal Rules of Civil Procedure provides in relevant part that: " . . . A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

(5:11 CV 979)

>regulation, custom, or usage, of any State or Territory . . . subjects,
>or causes to be subjected, any citizen of the United States or other
>person within the jurisdiction thereof to the deprivation of any rights,
>privileges, or immunities secured by the Constitution and laws, shall be
>liable to the party injured in an action at law, suit in equity,
>or other proper proceeding for redress . . .

In order to state a claim under § 1983, plaintiffs must plead and prove that they have been deprived of a right secure by the Constitution or federal laws. *Weberg v. Franks,* 229 F.3d 514, 522 (6th Cir. 2000).

C.    Qualified Immunity

Law enforcement officers are entitled to qualified immunity for their discretionary functions unless their actions violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). The doctrine of qualified immunity recognizes that law enforcement officers must be able to made decisions without fear of litigation and personal monetary liability. *Anderson v. Creighton*, 483 U.S. 653, 658 (1987).

Plaintiffs' claims in this case revolve around the actions of defendant Deputy Anspach, in particular, defendant Deputy Anspach's arrest of Plaintiffs. The standard of qualified immunity is an objective one. To determine if defendant Deputy Anspach is entitled to qualified immunity, the Court must determine if: 1) the defendant violated a statutory or constitutional right; and 2) the right violated was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S.Ct. at 2080.

The threshold analysis in this case is whether Anspach violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures when he arrested them for

11

(5:11 CV 979)

interfering with the custody of Nautica Bush.  The determination of Fourth Amendment reasonableness is an objective inquiry in which the court determines whether the circumstances, when viewed objectively, justify the challenged action.  *Ashcroft v. al-Kidd*, 131 S.Ct. at 2080.  The Fourth Amendment regulates conduct, not thoughts.  If the action at issue is objectively justified, then the action is reasonable whatever the alleged subjective intent.  *Ashcroft v. al-Kidd*, 131 S.Ct. at 2080.

Once a defendant has come forward with facts that indicate he was acting within the scope of his discretionary authority with respect to the incident in question, the plaintiffs then bear the burden to present facts, which if true, would constitute a violation of clearly established law.  Any arrest without probable cause violates the law.  *Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir. 2003).  For a law enforcement officer to have probable cause for an arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Crockett v. Cumberland College,* 316 F.3d at 580 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  Probable cause requires only the probability of criminal activity, which is assessed under a reasonableness standard based on an "examination of all the facts and circumstances within an officer's knowledge at the time of an arrest."  *Crockett v. Cumberland College,* 316 F.3d at 580 (quoting *Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir. 1999)).

D.      <u>Analysis</u>

In this case, Plaintiffs incorporated defendant Deputy Anspach's Incident Report

12

(5:11 CV 979)

regarding the events of May 19, 2009 into their complaint, so it is appropriate for the Court to consider that document in its Rule 12 analysis.  That well-documented report, which includes the statement of Kristel Kirkpatrick, establishes the factual bases upon which defendant Deputy Anspach arrested and charged Plaintiffs with interfering with child custody.  Defendant Deputy Anspach responded to two phone calls within a short period of time regarding the welfare of Nautica Bush.  He also received an eyewitness account from the child's babysitter that Plaintiffs' attempted to take the child.  This report objectively establishes that the facts and circumstances within defendant Deputy Anspach's knowledge at the time was sufficient to warrant his belief that Plaintiffs had committed a crime.  Defendant Deputy Anspach's alleged subjective motivations have no bearing on the analysis of these objective facts and circumstance.  Further, the validity of an arrest does not depend on whether Plaintiffs actually committed a crime or even that the charges were later dismissed.  *See Michigan v. DeFillippo*, 443 U.S. at 36.

After examining the Plaintiffs' complaint and documents attached thereto, and assuming the allegations to be true, the only reasonable conclusion possible based on Plaintiffs' pleadings is that defendant Deputy Anspach had a sufficient factual basis to arrest Plaintiffs, and the Court so concludes.  Plaintiffs' claims that defendant Deputy Anspach violated their constitutional rights are without merit, and Defendants' Rule 12 motion as to all constitutional claims asserted against defendant Deputy Anspach will be granted.

Plaintiffs do not identify the defendant whom they allege violated various constitutional rights in Claims 1, 2, and 4.  However as indicated *supra,* the Court assumes that Plaintiffs are referring to defendant Deputy Anspach in these claims.  For the reasons stated above, the Court

(5:11 CV 979)

has determined as a matter of law that defendant Deputy Anspach did not violate Plaintiffs' constitutional rights, and therefore Defendants' motion to dismiss Claims 1, 2 and 4 of Plaintiffs' complaint pursuant to Rule 12 is GRANTED.

Plaintiffs also do not identify the defendant whom they allege violated their constitutional right to be free of excessive fines in Claim 3. Presumably Plaintiffs' third claim for relief relates to the fact that the judge in the Municipal Court of Stow required Plaintiffs to pay cost with respect to the dismissed criminal cases. However, none of the defendants named by the Plaintiffs in their complaint bear any responsibility for the Stow Municipal Court, and Claim 3 fails as a matter of law. Accordingly, Defendants' Motion to Dismiss Claim 3 is GRANTED.

Plaintiffs do not identify the defendant whose conduct they allege constitutes false arrest and imprisonment (Claim 5) and assault and battery (Claim 6).  In any event, these claims appear to be pendent state claims and they are dismissed without prejudice.

Plaintiffs' seventh claim for relief is against the City of Akron and Summit County pursuant to § 1983 on the grounds that the alleged unconstitutional actions of defendant Deputy Anspach constituted "official policy." The Court has previously determined that defendant Deputy Anspach did not violate Plaintiffs' constitutional rights, which warrants dismissal of Claim 7 on that basis alone. In addition with respect to the City of Akron, it is apparent that defendant Deputy Anspach is a deputy sheriff and not a police officer with the City of Akron, and that the City of Akron has no involvement in this matter. With respect to Summit County, even construing the complaint in a light most favorable to Plaintiffs, the pleadings fail to set forth a *Monell* claim. For these reasons, Defendants' Motion to Dismiss Claim 7 is GRANTED.

(5:11 CV 979)

Plaintiffs do not identify the defendant in Claim 8 whose conduct they allege resulted in the infliction of emotional distress.  However as indicated *supra,* the Court assumes that Plaintiffs are referring to defendant Deputy Anspach.  This claim is a state pendent claim, and is dismissed without prejudice.

Plaintiffs do not identify the defendants in Claim 9 whose conduct they allege was negligent.  This claim is anchored in the conduct of defendant Deputy Anspach which Plaintiffs' alleged violated their constitutional, statutory and common law rights.  Giving the Plaintiffs the benefit of the doubt, this claim is *Monell* claim.  However, the Court has determined that defendant Deputy Anspach did not violate Plaintiffs' constitutional rights, and Plaintiffs have failed to identify which defendants had a duty to "hire, train, oversee, supervise discipline police officers and sheriff [sic] department so as to prevent violations of plaintiff's [sic] . . . rights." Accordingly, Plaintiffs' ninth claim sounding in "negligence" is without merit.

Plaintiffs' tenth claim against defendant Deputy Mark Anspach alleges malicious prosecution.  This claim appears to be pendent state claim, and is dismissed without prejudice.

III.  Conclusion

For the reasons contained herein, Defendants' Motion to Dismiss is GRANTED.  All federal claims are dismissed with prejudice, and all pendent state claims are dismissed without prejudice and at the Plaintiffs' costs.

(5:11 CV 979)

       The Clerk is directed to mail a copy of this Memorandum Opinion and Order to plaintiffs at their address of record.

       IT IS SO ORDERED.

| | |
|---|---|
|  December 15, 2011 | */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |